UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                            :

MIRACLE VENTURES I, LP,              :

                      Plaintiff,      :

                                            :                21 Civ. 8941 (LGS)

           -against-             :

                                            :          **OPINION AND ORDER**

CATHERINE SPEAR, ET AL.,         :

                          Defendants. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Miracle Ventures I, LP, brings this action against Defendants FIGS Inc.

("FIGS"), Catherine Spear and Heather Hasson alleging fraud and breach of fiduciary duty.

Defendants move to dismiss the Amended Complaint (the "Complaint").  For the reasons stated

below, the motion is granted.

## I.     BACKGROUND

       The following facts are taken from the Complaint and the stock purchase agreement

("SPA") between Plaintiff, FIGS, and the Tull Family Trust ("Tull").  The SPA is incorporated by

reference in, and integral to, the Complaint.  *See In re Synchrony Fin. Servs. Litig.*, 988 F.3d 157,

171 (2d Cir. 2021) ("[A]t the motion to dismiss stage, courts 'may consider . . . documents

incorporated into the complaint by reference . . . and documents possessed by or known to the

plaintiff and upon which it relied in bringing the suit.'").  Except as otherwise noted, the

allegations of the Complaint are assumed to be true for purposes of this motion.  *See R.M.*

*Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

### A.     The Facts Underlying Plaintiff's Claims

       Defendant FIGS is a healthcare apparel and lifestyle brand.  Defendants Spear and

Hasson were at all relevant times officers and directors of FIGS.  Plaintiff is a former

shareholder of FIGS.  On April 27, 2017, Spear emailed Plaintiff soliciting the sale of Plaintiff's

shares in FIGS.  Spear told Plaintiff that the price offered was "a significant premium."  The

same day, Plaintiff asked Spear for an update on FIGS's business.  Spear responded the next day

that "[t]he business is doing OK."  Plaintiff asked Spear for financial metrics, and Spear

responded with one page showing disappointing revenues below projections, a substantial loss

and a layoff of the sales team, among other issues.  Defendants did not provide Plaintiff with the

company's full financial statements, and specifically did not provide FIGS's balance sheet,

income statement or cash flows for the twelve months ending December 31, 2016.

On June 6, 2017, Plaintiff entered into the SPA, selling 137,852 shares of FIGS common

stock to Tull for a price of $1.81 per share or $249,491.45 in total.  As of June 17, 2017, Tull or

an affiliate of Tull had entered into an arrangement to invest approximately $65 million in FIGS

(the "Tull Investment").  An investment of that size into what was then a small, thinly-

capitalized company constituted a significant change in FIGS's financial condition, greatly

increasing its prospects for growth and its liquidity, increasing the value of its shares, and

making it more attractive for a public offering.  Defendants did not disclose to Plaintiff that

FIGS was undertaking a new round of financing or that it was in discussions with Tull

concerning a major investment.  Plaintiff learned about the Tull Investment from a November 4,

2020, news report.

B.     The Parties' SPA

The SPA between Plaintiff, FIGS and Tull contained the following relevant

representations.  Among the "Representations and Warranties of the Selling Stockholders [i.e.,

Plaintiff]," paragraph 2.7, titled "Sophisticated Seller," states in relevant part:

> The Selling Stockholder [Plaintiff] (a) is a sophisticated investor familiar with
> transactions similar to those contemplated by this Agreement, (b) has adequate

information concerning the business and financial condition of the Company [FIGS] to make an informed decision regarding the sale of the Subject Shares, (c) has independently and without reliance upon the Purchaser [Tull] or [FIGS] (except with respect to the representations and warranties contained in Sections 3 and 4, respectively), and based on such information and the advice of such advisors as [Plaintiff] has deemed appropriate, made its own analysis and decision to enter into this Agreement. . . . [Plaintiff] further acknowledges that (w) [Tull] currently may have, and later may come into possession of, information with respect to [FIGS] that is not known to [Plaintiff] and that may be material to a decision to sell the Subject Shares ("Excluded Information"), (x) [Plaintiff] has determined to sell the Subject Shares notwithstanding any lack of knowledge of the Excluded Information, (y) the value of the Subject Shares may significantly appreciate or depreciate over time and by agreeing to sell the Subject Shares to [Tull] pursuant to this Agreement, [Plaintiff] is giving up the opportunity to sell the Subject Shares at a higher price in the future . . . .

The "Representations and Warranties of the Company," paragraph 4.3, states that FIGS "delivered to the Purchaser its unaudited balance sheet as of December 31, 2016 and unaudited statement of income and cash flows for the twelve months ending December 31, 2016."

The SPA also includes (1) a standard merger clause stating that the "Agreement reflects the entire agreement among the parties with respect to the matters set forth herein;" (2) a broad, general release of claims among Plaintiff and FIGS and related entities and (3) a choice-of-law provision stating that the "Agreement shall be construed in accordance with and governed by the internal laws of the State of Delaware."

II.     STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d

3

842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

To allege fraud, "a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To comply with this rule "a plaintiff must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Synchrony*, 988 F.3d at 167 (internal quotation marks omitted).  The adequacy of particularized allegations under Rule 9(b) is "case- and context-specific." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (internal quotation marks omitted).

III.   **DISCUSSION**

   A.   **Fraud Claim Against FIGS**

The Complaint asserts a fraud claim against FIGS in connection with the stock purchase transaction.  That transaction is governed by the SPA to which Plaintiff and FIGS were parties.  The fraud claim is based on alleged material omissions when FIGS induced Plaintiff to sell its

shares.  FIGS asserts that the claim is barred by the SPA's anti-reliance clause.  FIGS is correct, and the fraud claim is dismissed.

### 1.  Choice of Law

Delaware law governs the fraud claim because the SPA contains a Delaware choice of law provision.  "A federal court sitting in diversity applies the choice-of-law rules of the forum state." *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (internal quotation marks omitted).  New York courts "generally enforce choice-of-law clauses." *Deutsche Bank Nat'l Tr. Co. v. Barclays Bank PLC*, 140 N.E.3d 511, 519 (N.Y. 2019).

The SPA's choice-of-law clause states, "this Agreement shall be construed in accordance with and governed by the internal laws of the State of Delaware without giving effect to any choice of law or rule that would cause the application of the laws of any [other] jurisdiction . . . to the rights and duties of the parties."  Neither party invokes a public policy or other reason that their choice of Delaware law should not be enforced.  *Cf., e.g., Petroleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, No. 20-3858, 2022 WL 7296519, at *12 (2d Cir. Oct. 13, 2022).  Delaware law therefore applies without the need "to determine whether there is an actual conflict between the laws of the jurisdictions involved." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) (quoting *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993)).

### 2.  Nondisclosure and the Anti-Reliance Clause

The gravamen of the fraud claim is that FIGS persuaded Plaintiff to sell its shares without disclosing that FIGS was engaged in discussions with Tull that it would provide new financing and that, as of June 2017, Tull had entered into an arrangement to invest approximately $65 million in FIGS, resulting in a significant change to FIGS' financial condition.  The fraud claim

is dismissed because Plaintiff expressly disclaimed reliance on any misrepresentations or

omissions by FIGS except the representations and warranties expressly set forth in the SPA.

"To state a claim for fraud, a plaintiff must allege [among other things that] the plaintiff

acted or refrained from acting in justifiable reliance on [a defendant's false] representation."

*Valley Joist BD Holdings, LLC v. EBSCO Indus., Inc.*, 269 A.3d 984, 988 (Del. 2021).  "[C]lear

anti-reliance clauses undercut the element of reliance when a plaintiff's fraud claims rest on

extra-contractual statements."  *Online HealthNow,Inc. v. CIP OCL Invs., LLC*, No. 2020-0654,

2021 WL 3557857, at *13 (Del. Ch. Aug. 12, 2021).  A disclaimer of reliance on extra-

contractual statements also disclaims extra-contractual omissions.  *See Prairie Cap. III, L.P. v.*

*Double E Holding Corp.*, 132 A.3d 35, 51-55 (Del. Ch. 2015); *Infomedia Grp., Inc. v. Orange*

*Health Sols., Inc.*, No. N19C-10-212, 2020 WL 4384087, at *7-9 (Del. Super. July 31, 2020).

Plaintiff's only allegation of a misstatement within the four corners of the contract is that

the SPA "falsely stated that FIGS delivered to Plaintiff the unaudited balance sheet and

unaudited statement of income and cash flows for the 12 months ending December 31, 2016."

This allegation is incorrect and contradicted by the SPA, which contains a representation that

FIGS delivered those financial statements to the *Purchaser* -- i.e., to Tull.  The SPA makes no

representation that any financial statements were delivered to Plaintiff.  Apart from the

Complaint's mistaken assertion of a misstatement, the fraud claim rests solely on extra-

contractual statements and omissions that are squarely within scope of the anti-reliance clause.

The anti-reliance clause, quoted in full above, states in part that Plaintiff "has adequate

information concerning the business and financial condition of the Company to make an

informed decision regarding the sale of the Subject Shares . . . has independently *and without*

*reliance* upon the Purchaser [Tull] or [FIGS] (except with respect to the representations and

warranties contained in Sections 3 and 4, respectively), and based on such information . . . made its own analysis and decision to enter into this Agreement."  (Emphasis added.)  "If a party represents that it only relied on particular information, then that statement establishes the universe of information on which that party relied."  *Prairie Cap.*, 132 A.3d at 51.  This clause "define[s] the universe of information that is in play for purposes of a fraud claim," and Plaintiff "cannot point to extra-contractual information and escape the contractual limitation by arguing that the extra-contractual information was incomplete."  *Id.* at 52.  FIGS makes representations and warranties in Section 4.3 of the SPA, but none of them pertain to the alleged omissions here.

Because of this specific anti-reliance provision, Plaintiff cannot meaningfully distinguish the controlling cases on which Defendants rely.  The anti-reliance clause here "contain[s] a promise by the plaintiff that it did not rely on extra-contractual statements," *Heritage Handoff Holdings, LLC v. Fontanella*, No. 16 Civ. 691, 2019 WL 1056270, at *4-5 (D. Del. Mar. 6, 2019), and "actually include[s] a specific acknowledgment by a party that it is only relying on information contained within the four corners of the agreement," *Anschutz Corp. v. Brown Robin Cap., LLC*, No. 2019-0710, 2020 WL 3096744, at *13-14 (Del. Ch. June 11, 2020).  The clause at issue is at least as explicit as those in the cases on which Plaintiff relies.  *See Prairie Cap.*, 132 A.3d at 50 (enforcing clause stating that "the Buyer has relied on (a) the results of its own independent investigation and (b) the representations and warranties of the Double E Parties expressly and specifically set forth in this Agreement," that did not specifically disclaim reliance on other statements); *Infomedia*, 2020 WL 4384087, at *3 (enforcing plaintiff's "acknowledge[ment] that, except for the representations and warranties contained in Article II, it is not relying on any representation or warranty (whether express or implied) by or on behalf of [the defendant]").

The SPA's anti-reliance provision also precludes fraud claims based on alleged omissions.  In the same provision, Plaintiff expressly disclaimed the need for material, omitted information:  Plaintiff "acknowledge[d] that (w) the Purchaser currently may have, and later may come into possession of, information with respect to the Company that is not known to the Selling Stockholder and that may be material to a decision to sell the Subject Shares ('Excluded Information'), (x) the Selling Stockholder has determined to sell the Subject Shares notwithstanding any lack of knowledge of the Excluded Information . . . ."  This provision even makes material omissions a defined term -- "Excluded Information" -- and expressly negates reliance on any omission, even a material one.  Because material omissions are at the heart of the claim against FIGS, Plaintiff's fraud claim is dismissed.[1]

### B.      Breach of Fiduciary Duty

#### 1.  Choice of Law

The Complaint asserts a breach of fiduciary duty claim against Defendants Spear and Hasson, each of whom "at all relevant times was an officer and director of FIGS," in connection with Plaintiff's sale of FIGS shares.  New York's choice of law principles include the "internal affairs doctrine," which provides that "relationships between a company and its directors and shareholders are generally governed by the substantive law of the jurisdiction of incorporation." *Eccles v. Shamrock Cap. Advisors, LLC*, 2022 N.Y. Slip Op. 05750, 2022 WL 7177313, at *1 (1st Dep't Oct. 13, 2022).  Because FIGS is a Delaware corporation, Delaware law governs this claim.

---

[1] It is therefore unnecessary to consider whether Plaintiff has pleaded the other elements of fraud with particularity, or whether Plaintiff's fraud claim is barred by the SPA's general release or the applicable statute of limitations.

## 2. Defendants' Duty of Disclosure

The Complaint asserts that Defendants Spear and Hasson breached their fiduciary duty to Plaintiff because they failed to disclose certain facts material to Plaintiff's decision to sell its FIGS shares.  Under Delaware law, the "scope and requirements" of a corporate fiduciary's duty of disclosure "depend on context."  *In re Wayport, Inc. Litig.*, 76 A.3d 296, 314 (Del. Ch. 2013). Three of the "recurring scenarios" in which disclosure claims arise are potentially relevant to Defendant's motion:  (1) a private stock sale, in which the duty of disclosure is governed by the "special facts doctrine;" (2) a request for stockholder action, in which a fiduciary must "exercise reasonable care to disclose all facts that are material" and reasonably available; and (3) the catch-all category of a corporate fiduciary's other statements to shareholders, in which "directors owe a duty to stockholders not to speak falsely."  *Id.* at 314-15.[2]  The breach of fiduciary duty claim is dismissed because it does not allege that Defendants Spear and Hasson violated a duty to disclose arising under the standards governing those scenarios.

### a.  Private Stock Sale

The special facts doctrine governs the duty to disclose of an officer or director who facilitates a private stock sale by an outside shareholder.  *See Wayport*, 76 A.3d at 315, 322.  In this circumstance, a director or officer can be liable only if she fails to disclose special facts "and deliberately misleads a stockholder who is ignorant of them."  *Id*. at 315 (internal quotation marks omitted) (citing and quoting *Lank v. Steiner*, 224 A.2d 242, 244 (Del. 1966)); *see also Clark v. Davenport*, No. 2017-0839-JTL, 2019 WL 3230928, at *9 (Del. Ch. July 18, 2019); *In re UD Dissolution Corp.*, 629 B.R. 11, 35 (Bankr. D. Del. 2021).  A "special fact" must be of

---

[2] A fourth scenario recognized in Delaware law is "common law ratification, in which directors seek approval for a transaction that does not otherwise require a stockholder vote." *Id.* at 314. The Complaint cannot be read to allege this scenario, and no party argues to the contrary.

"sufficient magnitude" and requires more than a showing of materiality.  *Wayport*, 76 A.3d at

320-21.  Preliminary negotiations generally do not become material until the parties have agreed

on the price and structure of a transaction.  *Id*. at 321; *Davidow v. LRN Corp.*, No. 2019-0150,

2020 WL 898097, at *10 (Del. Ch. Feb. 25, 2020).  For example, the Delaware Court of

Chancery found that a company's sale of an important patent was a material transaction, but that

"the plaintiffs did not prove at trial that the [patent] sale substantially affected the value of their

stock to the extent necessary to trigger the special facts doctrine."  *Wayport*, 76 A.3d at 322.  The

court cited examples of sufficiently significant transactions, including "an offer for the whole

company," and asset sales, mergers and other transactions so substantial that they would enhance

the value of the company's stock.  *Id*. at 320 (collecting cases).

The Complaint asserts that Defendants Spear and Hasson should have, but failed to,

disclose that a new round of financing was being undertaken by FIGS, that FIGS was engaged in

discussions with Tull to provide new financing and that, as of June 17, 2017, Tull or its affiliate

had entered into an arrangement with FIGS to invest $65 million in FIGS.  Even assuming Tull's

ultimate investment in FIGS was significant enough to trigger the special facts doctrine, the

Complaint provides no basis from which to infer that the "price and structure" of such a

significant transaction had been agreed upon by June 6, 2017, when Plaintiff signed the SPA.

Nor does the Complaint contain any facts to support the inference that any investment

contemplated as of June 6, 2017, would have such an impact on FIGS's stock price that it

constituted a special fact.  Drawing reasonable inferences in favor of Plaintiff, the most one

might infer is that FIGS was in discussions with Tull on June 6, 2017, but that is insufficient.

### b.  Request for Shareholder Action

Contrary to Plaintiff's argument, the less demanding standard applicable to a request for shareholder action is inapplicable here.  *See Wayport*, 76 A.3d at 314 (noting that, in that context, "the directors have a duty to 'exercise reasonable care to disclose all facts that are material to the stockholders' consideration of the transaction or matter and that are or can reasonably be obtained through their position as directors'").  The Complaint does not allege that Plaintiff's sale of stock was "a transaction that requires stockholder approval (such as a merger, sale of assets, or charter amendment) or which requires a stockholder investment decision (such as tendering shares or making an appraisal election) . . . ."  *Wayport*, 76 A.3d at 314.  More disclosure would be required if action or approval were sought from shareholders as a group, because of "the collective action problem that stockholders, in the aggregate, are faced with when asked to vote or tender their shares," which makes it "impractical, if not impossible, for each stockholder to ask and have answered by the corporation its own set of questions regarding the decision presented for consideration."  *Dohmen v. Goodman*, 234 A.3d 1161, 1171 (Del. 2020) (quoting *Latesco, L.P. v. Wayport, Inc.*, No. 4167-VCL, 2009 WL 2246793, at *6 (Del. Ch. July 24, 2009)).  "These same factors do not, however, come into play" in the situation here, "when the corporation asks a stockholder as an individual to enter into a purchase or sale," because "the stockholder may refuse to do so until he is satisfied the corporation has given him sufficient information to evaluate the decision presented to him."  *Dohmen*, 234 A.3d at 1171 (quoting *Latesco, L.P.*, 2009 WL 2246793, at *6); *cf. In re MultiPlan Corp. Stockholders Litig.*, 268 A.3d 784, 807 & nn.131-32 (Del. Ch. 2022) (requiring greater disclosure where "public stockholders could not 'refuse' to redeem until they were satisfied that sufficient information had been presented to them" and "[t]here were 'thousands'" of them).

### c.  Other Statements by Directors

Delaware recognizes a catch-all category of statements by corporate fiduciaries, including "public statements made to the market" and "statements informing shareholders about the affairs of the corporation," in which directors owe only a duty "not to speak falsely." *Wayport*, 76 A.3d at 315.  Even where no affirmative duty of disclosure exists, the fiduciary duty of loyalty requires that when Defendants Spear and Hasson "chose to speak [they] had to do so honestly." *Dohmen*, 234 A.3d at 1171 (citing *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998), and *Prairie Cap. III*, 132 A.3d at 52).  The Complaint does not allege that Spear or Hasson ever "knowingly disseminate[d] false information that result[ed] in corporate injury or damage to an individual stockholder." *Id.* at 1169 & nn.29-30 (citing *Malone*, 722 A.2d at 9-10).

The Complaint alleges that Plaintiffs requested, and Spear provided, information about the then-current state of the business.  The Complaint asserts that Spear falsely stated on April 27, 2017, that the price offered for Plaintiff's shares was a "significant premium," "as Defendant Spear[] knew that the price offered was substantially below the fair value of the shares."  But the Complaint does not contain sufficient detail under Rule 9(b) to explain how this statement about the value of FIGS shares on April 27, 2017, was false. *See Blank v. TriPoint*, 338 F. Supp. 3d 194, 221 (S.D.N.Y. 2018) ("When a breach of fiduciary duty claim is, in substance, a claim of fraud, the requirements of Rule 9(b) are triggered." (internal quotation marks omitted)).  The Complaint also alleges when Spear advised Plaintiff on April 28, 2017, that "[t]he business is doing OK," and on some unspecified date provided an information sheet with negative information about FIGS, she omitted to tell Plaintiff that FIGS was planning a new round of financing and was in discussions with FIGS about financing.  But the Complaint does not allege that Spear's statement or the information sheet were untruthful, nor that Spear or Hasson said

anything about negative prospects for future financing.  *Cf. Wayport*, 76 A.3d at 311 (statement

that the company was "not aware of any bluebirds of happiness in the Wayport world right now"

was later rendered misleading when new opportunity arose).  As discussed above, Spear and

Hasson did not have an affirmative duty to disclose an inchoate, potential future transaction.

The claim against Hasson is dismissed for the additional reason that the Complaint

contains no specific factual allegations about her statements or conduct.  Instead, the Complaint

refers to Hasson and Spear, together defined as the "Individual Defendants," and alleges that the

Individual Defendants failed to disclose various material facts.  There is no allegation that

Hasson "chose to speak" and did so dishonestly.  *Dohmen*, 234 A.3d at 1171.

Because the Complaint does not sufficiently allege that the Defendants Spear and Hasson

breached a duty by failing to disclose the Tull Investment, it is unnecessary to decide whether

Plaintiff's breach of fiduciary duty claim is otherwise sufficiently pleaded, or whether it is barred

by the anti-reliance clause, the general release or any statute of limitations.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  Plaintiffs'

claims are dismissed.  Plaintiff may, but is not required to, seek leave to replead its breach of

fiduciary duty claim.  Should Plaintiff choose to do so, it shall file within fourteen days of this

Order a red-lined version of the proposed second amended complaint ("PSAC"), showing

changes from the first Amended Complaint, together with a letter application, not to exceed three

pages, explaining how the proposed amendment cures the deficiencies identified above.

The record contains evidence, albeit outside the pleadings, that Tull's $65 million

investment in FIGS did not come to fruition until 2018.  Defendants assert that no further stock

purchases by Tull were even contemplated by Defendants until October 2017.  If the PSAC

continues to allege that FIGS and Tull had an "arrangement" or agreement on a significant,

additional investment by Tull in or around June 2017 or earlier, the PSAC shall describe the

arrangement with specificity and state the good-faith basis for the allegation, with any

explanation in the accompanying letter.  Plaintiffs may not seek leave to replead the fraud claim

as it is foreclosed by the PSA and cannot be cured by repleading.

  The Clerk of Court is respectfully directed to close the motion at Docket Number 32.

Dated: November 1, 2022
   New York, New York

                **LORNA G. SCHOFIELD**
            **UNITED STATES DISTRICT JUDGE**