```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
MIRACLE VENTURES I, LP,                                       :
                                Plaintiff,                    :
                                                              :            21 Civ. 8941 (LGS)
                -against-                                     :
                                                              :            OPINION AND ORDER
CATHERINE SPEAR, et al.,                                      :
                                Defendants.                   :
------------------------------------------------------------- X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Miracle Ventures I, LP, originally brought this action against Defendants FIGS Inc. ("FIGS"), Catherine Spear and Heather Hasson alleging fraud and breach of fiduciary duty. Defendants' motion to dismiss the First Amended Complaint (the "FAC") was granted. The fraud claim was dismissed with prejudice, but Plaintiff was granted leave to replead the breach of fiduciary duty claim against Spear and Hasson. Defendants now move to dismiss the amended breach of fiduciary duty claim, the sole claim in the Second Amended Complaint (the "SAC"). For the reasons stated below, the motion is granted.

I.  BACKGROUND

Familiarity with the factual background and procedural history is assumed. *See Miracle Ventures I, LP v. Spear*, No. 21 Civ. 8941, 2022 WL 16578962 (S.D.N.Y. Nov. 1, 2022) (granting Defendants' first motion to dismiss). Capitalized terms below that are not defined have the meaning given in that prior opinion. In brief, the fiduciary duty claim in the FAC was dismissed because the FAC failed to allege that Spear or Hasson breached a duty of disclosure. The FAC alleged in substance that, as of the date that Plaintiff sold its stock, FIGS's transaction with Tull was still preliminary; the FAC did not allege facts suggesting that the price and structure had

been agreed upon. In those circumstances, under Delaware law, the Tull transaction was not a "special fact" giving rise to an affirmative duty to speak. *Id.* at *5.

The principal amendment to Plaintiff's pleadings effected by the SAC was to add an allegation that, at the time Plaintiff sold its shares to Tull:

> FIGS had entered into an agreement with Tulco LLC, a private company owned or controlled by Thomas Tull and/or the Tull Family Trust (collectively "Tull") for a multi-tiered investment in FIGS to (1) to acquire all of the shares of FIGS held by outside investors, (2) to invest in FIGS to provide the capital necessary to grow the business of FIGS, (3) to provide its expertise and resources to grow the business of FIGS, and (4) to undertake an initial public offering of FIGS shares.

The SAC also contains more detailed allegations about how the Tull investment transformed FIGS's business and the value of FIGS shares.

## II. STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a complaint to allege facts that are consistent with liability; it must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide

2

the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

### III.   DISCUSSION

#### A.   Choice of Law

Delaware law governs the breach of fiduciary duty claim in the SAC for the same reason it governed the analogous claim in the FAC. Spear and Hasson each, "at all relevant times was an officer and director of FIGS," in connection with Plaintiff's sale of FIGS shares. FIGS is a Delaware corporation, and under the "internal affairs doctrine" applicable in New York, "relationships between a company and its directors and shareholders are generally governed by the substantive law of the jurisdiction of incorporation." *Eccles v. Shamrock Cap. Advisors, LLC*, 176 N.Y.S.3d 35, 37 (1st Dep't 2022). Neither party argues that a different state's law should apply in their briefing on the instant motion. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law . . . ." (internal quotation marks omitted)).

#### B.   The Contractual Releases

Defendants' motion to dismiss is granted because the general release provision accompanied by the anti-reliance provision in the SPA bar Plaintiff's claims. On June 6, 2017, Plaintiff entered into the SPA with FIGS and Tull selling Plaintiff's shares of FIGS common stock to Tull. The SPA contains a broad general release in Section 6.10, entitled "Mutual Releases of Claims" (the "Release"). It states in relevant part:

> Effective upon the Closing, except for the rights and obligations created by this Agreement, in exchange for the commitments of the Company [FIGS] and Purchaser [Tull] herein, each Selling Stockholder [Plaintiff] hereby voluntarily and knowingly waives, releases, acquits and forever discharges the Company,

3

> Purchaser and, to the full extent such persons or entities exist, each of their parents, subsidiaries, predecessors, successors, affiliates, assigns, officers, directors, employees and agents from any and all claims, demands and causes of action, whether known or unknown, fixed or contingent, of any kind or character whatsoever, that have accrued or that could have been brought as of the Closing arising out of or in any way related to agreements, events, acts or conduct, *including with respect to the Subject Shares*, that occurred at any time prior to *and including the date such Selling Stockholder signs this Agreement*.  (Emphasis added.)

"Delaware courts uphold contractually valid general releases."  *Alvarez v. Castellon*, 55 A.3d 352, 354 (Del. 2012) (citing *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1136, 1163 (Del. 2010)).  Generally, "[i]f the claim falls within the plain language of the release, then the claim should be dismissed."  *Seven Invs., LLC v. AD Cap., LLC*, 32 A.3d 391, 396 (Del. Ch. 2011).  On the face of the Release, Plaintiff (a "Selling Stockholder") waived *all* claims against Spear and Hasson ("directors" of "the Company" at the time), including the claims in the SAC.  Plaintiff argues that the Release is unenforceable, at least as against a breach of fiduciary duty claim that sounds in fraud in the inducement of the Release itself.  Contrary to Plaintiff's argument, the Release here bars the claims in the SAC under Delaware law.

"Where the language of the release is clear and unambiguous, it will not lightly be set aside."  *Id.* (cleaned up).  However, like other contractual provisions, a court may "set aside a clear and unambiguous release where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries."  *Alvarez*, 55 A.3d at 354 (citing *Deuley*, 8 A.3d at 1163).  Fraud in the inducement does not always vitiate a release, because even these claims can be released.  "When a plaintiff asserts that the release itself was induced by the defendant's fraud, 'the party seeking enforcement of the release bears the burden of proving that the released fraud claim was within the contemplation of the releasing party.'"  *Seven Invs.*, 32 A.3d at 396 (quoting *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 461 (Del.

4

1999)). Even though defendants bear the burden on this issue, a plaintiff's claims still may be dismissed based on "(i) the plain language of the release or (ii) allegations in the complaint that establish the defense or rule out any other reasonably conceivable inference." *Id.* The plain language of the SPA releases Plaintiff's claims and distinguishes this case from those that Plaintiff cites.

Plaintiff relies primarily on *DuPont*, which recognized for the first time the "fraud exception" to the enforceability of general releases. 744 A.2d at 461. The plaintiff alleged that an agreement to settle a prior action had been fraudulently induced by litigation misconduct in the prior action. The Delaware Supreme Court held that the general release executed as part of the settlement of a products liability case did not bar the later claim for fraud in the inducement of the settlement. "[I]f one party is to be held to release a claim for fraud in the execution of the release itself, the release should include a specific statement of exculpatory language referencing the fraud." *Id.*; *accord Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012). In the *DuPont* case, however, the court recognized that creating a new exception had the potential to "undercut the certainty and predictability of settlements and encourage a new class of settlement fraud litigation." *E.I. DuPont*, 744 A.2d at 461. The *DuPont* court emphasized that such incidents appeared to be "rare and exceptional," and emphasized that "[t]he fraud alleged [in *DuPont*], including the concealment of evidence during discovery [in the prior litigation] represents a wrong not only as to the releasing party but to the court as well." *Id.* The *DuPont* case recognized that litigation adversaries "entering into a general release are chargeable with notice that any uncertainty with respect to the contours of the dispute which led to the litigation, including that which is provable and that which is not, is resolved through the release." *Id.* (citing *Hob Tea Room v. Miller*, 89 A.2d 851, 856 (Del. 1952)); *accord Riverbend Cmty.*, 55

A.3d at 336-37.  However, the fraud in that case -- on both the court and the defendant's litigation adversary -- was found to be beyond the contours of the products liability claims in the prior case.  The release did not apply to a fraud that was different "sequentially and conceptually" from the underlying claims to which the release primarily applied.  *E.I. DuPont*, 744 A.2d at 462.  Applying a rule of construction not applicable here, the court also found that the release "[did] not purport to release" the fraud claims challenging the settlement agreement but was restricted to the products liability claims in the prior action.  *Id.* at 460.

Here, by contrast, the Release and surrounding provisions of the SPA apply directly to possible fraud in the sale of Plaintiff's shares.  The Release states broadly that it applies to all claims, "known or unknown, fixed or contingent, of any kind or character whatsoever."  "Such a release 'is intended to cover everything -- what the parties presently have in mind, as well as what they do not have in mind.'"  *Seven Invs.*, 32 A.3d at 397.  The Release goes on, however, to state expressly that it includes claims "with respect to the Subject Shares" that Plaintiff sold to Tull.  The Release also specifies that it covers not only "agreements, events, acts or conduct" in the past, but also on "the date [Plaintiff] signs this Agreement."

Plaintiff does not allege fraud extrinsic to, or conceptually or temporally distinct from, the issues in the Release.  *Accord, e.g.*, *Seven Invs.*, 32 A.3d at 400 ("Unlike in *DuPont,* the alleged fraud on which Seven Investments relies was not 'different sequentially and conceptually' from the fraud that was the subject of the settlement.").  It is difficult to imagine what claims against FIGS directors -- arising with respect to the sale of Plaintiff's shares, on the date of the sale -- Plaintiff could have contemplated when it signed the Release, if not the breach of fiduciary duty claims asserted in the SAC.  Thus, the Release does "include a specific

statement of exculpatory language referencing the fraud." *See Riverbend Cmty.*, 55 A.3d at 336 (quoting *E.I. DuPont*, 457 A.2d at 461).

That Plaintiff was on notice of, and released the very claims at issue here is further supported by Plaintiff's express representations and warranties elsewhere in the SPA:

> [Plaintiff] (a) is a sophisticated investor familiar with transactions similar to those contemplated by this Agreement, (b) has adequate information concerning the business and financial condition of the Company to make an informed decision regarding the sale of the Subject Shares, (c) has independently and without reliance upon the Purchaser or the Company (except with respect to the representations and warranties contained in Sections 3 and 4, respectively), and based on such information and the advice of such advisors as the Selling Stockholder has deemed appropriate, made its own analysis and decision to enter into this Agreement. . . . [Plaintiff] further acknowledges that (w) the Purchaser currently may have, and later may come into possession of, information with respect to the Company that is not known to the Selling Stockholder and that may be material to a decision to sell the Subject Shares ("Excluded Information"), (x) the Selling Stockholder has determined to sell the Subject Shares notwithstanding any lack of knowledge of the Excluded Information . . ."

In the first part of the quoted passage above, Plaintiff acknowledged that, apart from certain limited and inapplicable exceptions, Plaintiff did not rely on any extracontractual representations made by FIGS -- acting through its officers and directors like Spear and Hasson -- about the business and financial condition of FIGS. In the second part, Plaintiff disclaimed reliance on any information about FIGS that Tull might possess but that Plaintiff did not, such as FIGS's intention to pursue the Tull transaction. Thus, as reflected in the SPA, Plaintiff was on notice that possible material misrepresentations and omissions may have occurred, and disclaimed reliance on them nevertheless. Plaintiff assumed the risk that they might have occurred, and released claims asserting them. As the Delaware Court of Chancery recognized in a case with similar facts, "[t]he *DuPont* decision does not prevent parties from executing general releases that extinguish claims for fraud, including claims for fraud in the inducement, particularly

7

where," as here, "the party granting the release is on notice of potential fraud claims."  *Seven Invs.*, 32 A.3d at 399.

Plaintiff also argues that the specific claims in the SAC are not barred because the Release does not refer specifically to fiduciary duty claims.  But the Release is not limited to any type of claim.  Instead it applies broadly to "all claims, demands and causes of action . . . of any kind or character whatsoever."  The cases that Plaintiff cites in support of a special rule for fiduciary duties are inapposite, because they deal with *prospective* waivers of fiduciary duties, not after-the-fact releases of claims based on breaches of those duties that already occurred and that the plaintiff acknowledged may have occurred.  *Cf. Manti Holdings, LLC v. Carlyle Grp. Inc.*, No. CV 2020-0657, 2022 WL 444272, at *3-4 (Del. Ch. Feb. 14, 2022) (shareholders' agreement to "consent to and raise no objections against such transaction" waived objections to the sale but was not a "clear and unequivocal" waiver of fiduciary duties in connection with the sale); *Skye Min. Invs., LLC v. DXS Cap. (U.S.) Ltd.*, No. CV 2018-0059, 2020 WL 881544, at *21 (Del. Ch. Feb. 24, 2020) (finding that the parties' agreement held managers to contractual fiduciary duties the same as their common law duties except regarding corporate opportunities, which were expressly contractually excluded).  Thus, even if the SAC sufficiently alleges that Spear and Hasson breached a duty of disclosure or committed fraud in the inducement of the Release, any such claim was released under the SPA's express release of FIGS's officers and directors with respect to Plaintiff's sale of FIGS shares.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The SAC is dismissed with prejudice.

The Clerk of Court is respectfully directed to close the motion at Docket Number 54 and close the case.

Dated: May 4, 2023
       New York, New York

                                                  **LORNA G. SCHOFIELD**
                                               **UNITED STATES DISTRICT JUDGE**